# 97 DTA 191

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

H.F. MORTGAGE BANKERS, INC.
Peticionaria

v.

BANCO DE LA VIVIENDA; ESTADO LIBRE ASOCIADO DE PUERTO RICO; SR. JOSE EFRAIN TOLEDO GARCIA Y SU ESPOSA MARISOL MONTILLA SOTO Y LA SOCIEDAD LEGAL DE GANANCIALES QUE TIENEN CONSTITUIDA
Recurridos

Núms. KLCE-96-00596/KLCE-97-00094

San Juan, Puerto Rico, a 11 de septiembre de 1997

Panel integrado por su Presidente, Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano de Bonilla

Feliciano de Bonilla, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Se recurre mediante los presentes recursos de *certiorari* de las resoluciones emitidas el 16 de mayo de 1996 (recurso Núm. KLCE-96-00596) y el 10 de enero de 1997 (recurso Núm. KLCE-97-00094) por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, consolidados mediante resolución de 3 de marzo de 1997. Mediante la primera, dicho foro declaró no ha lugar varias mociones de sentencia sumaria presentadas por las partes, entendiendo que existía una controversia de hecho que había que dilucidar. En la segunda resolución, el foro de instancia ordenó a los peticionarios de ese recurso (Núm. KLCE-97-00094 ) a consignar en el Tribunal el pago por los meses adeudados de cierto préstamo hipotecario, a prestar una fianza de no residente y señaló vista de seguimiento para el 4 de marzo de 1997.

### I

Los hechos que motivan el recurso Núm. KLCE-96-00596, surgen a raíz de una petición de sentencia declaratoria y cobro de dinero presentada por la parte peticionaria, H. F. Mortgage Bankers, Inc., (en adelante H.F.) en el tribunal de instancia el 13 de enero de 1996. En la misma se solicitaba que dicho foro determinara los derechos de las partes en relación con una propiedad que aparece doblemente inmatriculada en el Registro de la Propiedad, Sección de Aguadilla. H.F. arguyó, entonces, ser tercero registral y solicitó del tribunal que dejara en efecto la inscripción de la cual surge una hipoteca a su favor y cancelara la otra inscripción.

Procedemos, pues, a esbozar los hechos que provocaron la presente controversia.

El 7 de diciembre de 1971 la Administración de Programas Sociales del Departamento de Agricultura, Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) segregó y cedió en usufructo la parcela número 1 de la finca matriz 5,141 inscrita al folio número 203, tomo 113 de Isabela, al señor Roberto Maldonado y a la señora Iris Rodríguez Vélez, casados entre sí. El referido negocio jurídico se llevó a cabo mediante la escritura número dos mil cinco (2,005) autorizada por el notario Francisco Santiago Vela el 7 de diciembre de 1971. La parcela quedó inscrita como la finca número 7,792, tomo 186 de Isabela, folio 186.

El Banco de la Vivienda concedió un préstamo de construcción al matrimonio Maldonado Rodríguez, por lo que, en esa misma fecha, los señores Maldonado Rodríguez suscribieron un pagaré a favor del Banco de la Vivienda de Puerto Rico, mediante el cual se obligaron a devolver a dicha institución la suma prestada de diez mil quinientos dólares, ($10,500) con intereses a razón del seis y tres cuartos (6 y 3/4) por ciento anual sobre el saldo impagado de la obligación.

Para garantizar el pago de la obligación plasmada en el pagaré, entre otras partidas, el mismo notario, Santiago Vela, autorizó también, el 7 de diciembre de 1971, la escritura número dos mil seis (2006), mediante la cual se hipotecó el derecho de usufructo sobre la finca que ostentaban los deudores ■ y la estructura que allí se construyera.

El 20 de mayo de 1976, la Administración de Programas Sociales y el matrimonio Maldonado Rodríguez otorgaron ante el notario Carlos Nieves Rivera la escritura número 846 de segregación y compraventa, mediante la cual, la primera segregó por segunda vez la misma parcela número 1 y la vendió a los usufructuarios por un dólar. El Registrador la inscribió como la finca número 12,198,

tomo 239 de Isabela, al folio 185.

El 27 de octubre de 1976, el Departamento de Cobros del Banco de la Vivienda autorizó a la División Legal a iniciar el trámite de ejecución de hipoteca de la finca número 7,792. Como único licitador compareció el Banco de la Vivienda. El 21 de diciembre de 1978, el notario Ramón Alberto Lugo autorizó la escritura número 376 de venta judicial, mediante la cual se traspasó al Banco de la Vivienda la propiedad objeto del presente caso. (Énfasis suplido.)

El matrimonio Maldonado Rodríguez vendió la **propiedad** (la finca número 12,198) y luego la readquirió. A tales fines obtuvo financiamiento de H.F. y constituyó hipoteca voluntaria sobre esa finca a favor de la peticionaria por la suma de treinta mil dólares ($30,000) para garantizar el préstamo. Posteriormente el matrimonio Maldonado Rodríguez dejó de pagarlo, por lo que H.F. presentó una acción civil de cobro de dinero y ejecución de hipoteca ante el Tribunal de Primera Instancia. Efectuada la subasta, se adjudicó la propiedad a favor de H.F. según consta en la escritura número 324 de venta judicial, autorizada el 25 de septiembre de 1980 por el notario Juan H. Soto Solá. La peticionaria a su vez, vendió la finca número 12,198 a la Administración de Veteranos, mediante la escritura número 378 otorgada el 7 de noviembre de 1980 ante el notario Juan H. Soto Solá. La Administración de Veteranos vendió la propiedad al matrimonio compuesto por José Efraín Toledo García y Marisol Montilla Soto mediante la escritura número 206 otorgada el 13 de octubre de 1983 ante el notario José M. Pizarro Zayas. La escritura de compraventa fue inscrita en el Registro de la Propiedad el 30 de diciembre de 1986.

El matrimonio Toledo Montilla tomó un préstamo de H.F. y lo garantizó con hipoteca sobre la finca 12,198. La controversia de la doble titularidad surge cuando un matrimonio que había opcionado la propiedad al Banco de la Vivienda fue a visitarla y encontró que en ella vivía el matrimonio Toledo Montilla.

Así las cosas, la peticionaria, H.F., presentó en el Tribunal de Primera Instancia una petición de sentencia declaratoria y cobro de dinero, el 13 de enero de 1996, mediante la cual solicitó que se ordenara la cancelación de la inscripción de la finca número 7,792, a tenor con el Art. 251 de la Ley Hipotecaria, 30 L.P.R.A. sec 2776. Arguyó, en síntesis, que es tercera registral y que sus derechos se estaban viendo afectados adversamente. Solicitó, además, que se ordenara a la parte co-recurrida, el matrimonio Toledo Montilla, a pagar las sumas adeudadas en su préstamo hipotecario, las cuales ascienden a trece mil seiscientos dólares ($13,600) de principal más diecisiete mil quinientos sesenta y siete dólares con ocho centavos ($17,567.08) de intereses y los subsiguientes al doce punto cinco porciento (12.5%) más quinientos treinta y seis dólares con cincuenta y un centavos ($536.51) y cargos por demoras pactados y los subsiguientes a treinta y ocho dólares con cincuenta y nueve centavos ($38.59) mensuales hasta su pago, más las costas y honorarios de abogados pactados. El matrimonio Toledo Montilla dejó de pagar los plazos del préstamo cuando se enteraron que su título adolecía del defecto de estar inmatriculado doblemente a nombre de otra entidad, Banco de la Vivienda, además de al suyo propio.

El 17 de marzo de 1995 los esposos Toledo Montilla presentaron su contestación a la petición de sentencia declaratoria. Alegaron que:

*"[l]os co-demandados comparecientes son terceros registrales de buena fe por que [sic] al momento de la transacción, donde obtuvieron la propiedad objeto de este caso, por compra a la Administración de Veteranos, desconocían que la misma hubiese sido objeto de una doble inmatriculación y, además siempre han estado en disposición de cumplir con sus responsabilidades, cuando este asunto se arregle y se le entregue un título depurado que le asegure que no habrá problema alguno ni que [sic] la posesión ni con el dominio de la misma".* Petición de *Certiorari*, apéndice, pág. 7.

Expresaron también que, a su entender, el verdadero responsable de la controversia surge de un acto negligente de los empleados del E.L.A. (del Registro de la Propiedad) ya que fueron éstos los que crearon el problema al propiciar la doble inmatriculación y fueron los que entregaron al matrimonio Maldonado Rodríguez dos títulos distintos de una misma propiedad.

El E.L.A. presentó, el 27 de marzo de 1995, una moción solicitando se desestimara la demanda en su contra a base de que el Banco de la Vivienda es una corporación pública con personalidad jurídica propia. Su representación legal parece no haberse percatado de que la razón por la que el E.L.A. fue traído al pleito fue por la negligencia del Registrador, en cuyo caso, sí corresponde demandar al E.L.A. y no por actuaciones del Banco de la Vivienda.

En oposición a la moción de desestimación que presentara H.F. el 15 de mayo de 1995, ésta arguye que el Registrador incumplió con el Art. 251 de la Ley Hipotecaria, 30 L.P.R.A. 2776, el cual dispone que si el Registrador notare que una finca aparece inscrita más de una vez, notificará de tal hecho a los presentantes y a los notarios autorizantes de los títulos inscritos en ambas fincas y pondrá una nota a los efectos de haber enviado tal aviso al margen correspondiente de las fincas en cuestión. Según H.F., tal omisión podría implicar un incumplimiento con los deberes ministeriales del Registrador. Por tanto, expresa la peticionaria que *"[e]stando el Registro de la Propiedad adscrito al Departamento de Justicia, a tenor con el Art. 2 (30 L.P.R.A. 2001), procede que se mantenga al Estado Libre Asociado como parte de este litigio"*.

A la sazón, el 26 de abril de 1995, los co-recurridos, matrimonio Toledo Montilla, presentaron una moción al amparo de la figura de saneamiento por evicción consagrada en los Arts. 1363 y siguientes del Código Civil, 31 L.P.R.A. secs. 3831 *et seq*. Expresaron que si en el presente caso prevalecían las defensas levantadas por el Banco de la Vivienda, habría de resultar que H.F. vendió a la Administración de Veteranos una propiedad que, al momento de la venta, no le pertenecía, lo que a su vez implicaría que la Administración de Veteranos vendió a los mencionados co-rrecurridos una propiedad de la que no era dueña, pudiendo resultar así que estos últimos pierdan la propiedad. Por tanto, los esposos Toledo Montilla alegan que, de darse la mencionada situación, H.F. y la Administración de Veteranos serían responsables para con ellos.

H.F. presentó una réplica a la moción de saneamiento por evicción. Básicamente argumentó que a tenor con el Art. 1350 del Código Civil, 31 L.P.R.A. sec. 3801, ▇ sería en todo caso la Administración de Veteranos la que respondería ya que fue esta entidad la que vendió la propiedad a los esposos Toledo Montilla. H.F. reiteró su posición a los efectos de que su interés es que se mantenga en efecto la inscripción de la finca número 12,198, de la cual surge la hipoteca a su favor, para así poder recobrar las sumas adeudadas por los Toledo Montilla.

El 18 de mayo de 1995 el Banco de la Vivienda presentó una solicitud de sentencia sumaria. Esbozó los hechos que ya hemos reseñado y solicitó al foro de instancia que procediera a ordenar la cancelación de la inscripción de la finca 12,198. El Banco de la Vivienda alegó que es el dueño de la propiedad objeto del litigio, que su derecho ha estado inscrito desde 1971, que en todo momento actuó de acuerdo a derecho, por lo que no es responsable de ninguno de los eventos que condujeron a la doble inmatriculación. El Banco alegó, además, que si bien es cierto que el préstamo que concedió al matrimonio Maldonado Rodríguez fue garantizado con hipoteca sobre el derecho de usufructo que de la finca número 7,792 éstos ostentaban, por mandato de ley la hipoteca se extendió a la titularidad sobre la finca. Basaron dicha alegación en el Art. 8 de la Ley Núm. 35 del 1 de junio de 1969, 28 L.P.R.A. 686, el cual dispone que:

*"[e]n aquellos casos en que el Banco de la Vivienda haya concedido un préstamo garantizado con el usufructo y con la edificación que en dicha parcela se hubiese construido, la hipoteca se extenderá automáticamente al pleno dominio de la parcela en cuestión, tal como si así se hubiese otorgado originalmente"*.

Mediante moción sometida por H.F. en junio de 1995, ésta presentó alegación suplementaria contra el E.L.A. Al igual que los esposos Toledo Montilla, H.F. entendió necesario formular una reclamación adicional contingente para el caso de que se ordenara la cancelación de la finca número 12,198. Expresó la peticionaria:

*"[e]n tal caso, el Estado Libre Asociado de Puerto Rico deberá responder por la negligencia incurrida por el Honorable Registrador de la Propiedad, sección de Aguadilla, que realizó una doble inmatriculación, debiendo el Estado Libre Asociado responder de todos los daños patrimoniales sufridos por H.F., debiendo a su vez satisfacer todas las cantidades que en la demanda se reclaman a José Toledo García y esposa"*.

Los esposos Toledo Montilla comparecieron mediante moción el 16 de junio de 1995, allanándose al desglose de los hechos que el Banco de la Vivienda expuso en su moción de sentencia sumaria. Sin embargo, entendió necesario añadir un dato muy importante a todo el marco fáctico. Expresaron que la escritura número 376 de venta judicial que traspasó la propiedad de la finca número 7,792 al Banco de la Vivienda fue otorgada el 21 de diciembre de 1976, pero no fue presentada en el Registro de la Propiedad sino hasta el 31 de marzo de 1981. Por otro lado, expresan los co-rrecurridos, que H.F. presentó para su inscripción la escritura número 324 de venta judicial de la finca número 12,198, cuatro (4) meses y diecinueve (19) días antes de que el Banco de la Vivienda presentara la que traspasó la finca número 7,792 a su favor. Así aclarado, el matrimonio Toledo Montilla expresó estar de acuerdo con que el Tribunal de Primera Instancia adjudique cuál de las dos inscripciones ha de prevalecer.

H.F. presentó una réplica a la moción de sentencia sumaria del Banco de la Vivienda y una solicitud de sentencia sumaria parcial, el 21 de junio de 1995, en la que suplica que, no existiendo controversia de hechos en cuanto a la controversia de la doble inmatriculación, el Tribunal ordene la cancelación de la inscripción de la finca número 7,792 con imposición de costas y honorarios. Arguyó, en síntesis, que según los propios documentos presentados por el Banco de la Vivienda, lo que dicha institución adquirió con la inscripción de la finca número 7,792 mediante la escritura número 2,006 de hipoteca, fue un derecho de usufructo sobre la propiedad y no su titularidad, ya que a esa fecha, el E.L.A., como titular de la propiedad, había cedido al matrimonio Maldonado Rodríguez el derecho de usufructo sobre la misma y los había autorizado a que hipotecaran su derecho de usufructo para garantizar al Banco de la Vivienda el préstamo que dicha institución habría de concederles para que construyeran una casa.

No obstante, alega H.F., que en la ejecución de la mencionada hipoteca y en la correspondiente escritura se traspasó a favor del Banco de la Vivienda la titularidad y no el usufructo de la finca número 7,792, lo cual según la peticionaria no podía ser objeto de ejecución por no ser parte de la hipoteca y porque los deudores hipotecarios no ostentaban, para ese entonces, la nuda propiedad de la finca.

El Banco de la Vivienda compareció el 10 de julio de 1995 replicando a las oposiciones a su moción de sentencia sumaria. Alegó, que al momento en que H.F. intervino por primera vez con la propiedad objeto de esta controversia (en 1979), ya tenía la hipoteca inscrita a su favor desde 1971 y que a tenor con el ya citado Art. 8 de la Ley Núm. 35 del 1 de junio de 1969, cuando la Administración de Programas Sociales vendió el solar a los usufructuarios Maldonado Rodríguez en 1976, la hipoteca se extendió automáticamente al pleno dominio de la propiedad.

Además, añade el Banco, que no es hasta 1983 que el matrimonio Toledo Montilla compró la parcela número 1, no inscribiéndola hasta 1986, inscripción que debió ser denegada porque el Registrador, ya para al menos julio de 1985, tenía conocimiento de la doble inmatriculación, según surge del apéndice de la petición de *certiorari*, pág. 28zz(1), (apéndice de la solicitud de sentencia sumaria presentada por el Banco de la Vivienda, exhibit 35).

Tanto H.F., el Banco de la Vivienda, como el matrimonio Toledo Montilla comparecieron en múltiples ocasiones para reiterar puntos ya planteados y para solicitar que el Tribunal dictara sentencia sumariamente a su favor. Es menester, sin embargo, hacer referencia a algunos señalamientos que no habían sido discutidos exhaustivamente hasta esta etapa del trámite del presente caso en el foro de instancia.

En enero de 1996, H.F presentó una moción para que el tribunal de instancia dictara sentencia sumaria parcial ordenando a los Toledo Montilla satisfacerle las sumas adeudadas. H.F. argumentó que la obligación del pago no está supeditada al hecho de que se resuelva la controversia sobre la doble inmatriculación de la propiedad. Expone que al presente, los Toledo Montilla no han sido perturbados en su posesión, uso y disfrute de la propiedad. Prueba de ello es que han arrendado la propiedad a terceros, devengando unos cánones de arrendamiento, y aún así, no han satisfecho las sumas adeudadas del préstamo hipotecario.

A estos señalamientos el matrimonio Toledo Montilla contestó que su posición era cobijada por las disposiciones de saneamiento por evicción del Código Civil; específicamente, el Art. 1391 dispone que:

*"Si el comprador fuere perturbado en la posesión o dominio de la cosa adquirida, o tuviere fundado temor de serlo por una acción reivindicatoria o hipotecaria, podrá suspender el pago del precio hasta que el vendedor haya hecho cesar la perturbación o el peligro, a no ser que afiance la devolución del precio en su caso, o se haya estipulado que no obstante cualquiera contingencia de aquella clase, el comprador estará obligado a verificar el pago."* 31 L.P.R.A. sec. 3873.

Los co-rrecurridos también exponen que aunque H.F. no haya sido quien les vendió directamente la finca número 12,198, ésta es tan responsable como cualquier otro transmitente. Citan el caso *Rivera Rosado v. E.L.A.*, 111 D.P.R. 109 (1981), donde el Tribunal Supremo expresa que *"el derecho al saneamiento por evicción se transmite al comprador con la cosa vendida, y por consiguiente, éste tiene contra el vendedor de su vendedor la acción que a este último vendedor correspondía"*.

Finalmente, H.F. replica a la oposición a su solicitud de sentencia sumaria parcial, en febrero de 1996, arguyendo que no se le puede imputar responsabilidad. Que según el Código Civil, es el vendedor quien viene obligado a la entrega y al saneamiento de la cosa objeto de la venta. Reiteró, además, su contención de que es tercero registral y de que todo comprador en subasta pública organizada por una agencia del gobierno puede confiar en que el Estado sigue unos procedimientos correctos y no vende lo que no le pertenece. En marzo de 1996, H.F. presentó dos mociones ante el foro de instancia. En una solicitó que el matrimonio Toledo Montilla prestara una fianza de no residente para garantizar las costas y honorarios en cuanto a la reclamación de saneamiento por evicción toda vez que residen en los Estados Unidos desde 1990. En la segunda moción, H.F. solicitó al Tribunal que ordenara a la arrendataria de los Toledo Montilla, señora Brunilda Martínez, a consignar mensualmente en la secretaría de dicho foro los cánones de arrendamiento en aseguramiento de sentencia, hasta que concluyera el pleito.

Así las cosas, se celebró una vista sobre el estado de los procedimientos del caso el 16 de mayo de 1996. Según surge de la minuta, el Tribunal informó a los abogados que existía una controversia de hecho que había que dilucidar, sin especificar cuál era la misma. Por lo tanto, declaró no ha lugar todas las mociones de sentencia sumaria presentadas. Además, declaró no ha lugar la moción de desestimación presentada por el E.L.A. Se indicó también que había que traer al pleito al Secretario de Justicia y a la Administración de Veteranos.

Es de la mencionada determinación del foro de instancia que recurre ante nos la peticionaria, H. F. señala como error que:

*"Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Aguadilla, al determinar que existe controversia de hecho que impide la utilización del mecanismo de sentencia sumaria para resolver la controversia de la doble inmatriculación lo que a todas luces es una cuestión de derecho adjudicable sumariamente.*

*Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Aguadilla, al determinar que existe controversia de hecho que impide adjudicar sumariamente la responsabilidad y/u obligación de pago contraído por los co-demandados-recurridos esposos TOLEDO-MONTILLA, para con la parte demandante-peticionaria quien es un tercero hipotecario."*

El Banco de la Vivienda presentó su oposición al recurso de *certiorari* el 16 de julio de 1996. Alegó, en síntesis, que ya tenía inscrita su hipoteca sobre la parcela número 1 desde 1971 y que a tenor con la Ley Núm. 35 del 14 de junio de 1969, la hipoteca gravaba el pleno dominio de la parcela y la edificación, y que desde que dejó de existir el usufructo, la hipoteca automáticamente se extendió a la nuda propiedad y así fue ejecutada. Expresó el Banco que el 21 de diciembre de 1978 se convirtió en el dueño en pleno dominio de la parcela número 1, finca número 7,792, al comprarla en pública subasta; que no fue hasta 1979 que H.F. concedió el préstamo hipotecario sobre la ya doblemente inmatriculada finca, y que no fue sino hasta 1980 que la adquirió mediante venta judicial. Solicitó, pues, que ordenáramos la cancelación de la inscripción de la finca número 12,198 y que declaráramos

que la propiedad objeto del litigio pertenece al Banco de la Vivienda. El 16 de agosto de 1996 este Tribunal emitió una resolución dando el caso por sometido.

Así las cosas, los co-rrecurridos, esposos Toledo Montilla, presentaron ante este Tribunal un recurso de *certiorari*, el 7 de febrero de 1997, donde se nos solicitaba que revocáramos una resolución emitida por el Tribunal de Primera Instancia el 10 de enero de 1997, mediante la cual dicho foro ordenó a los peticionarios, en ese recurso, a consignar el pago de la hipoteca por los meses adeudados a H.F., a prestar una fianza de no residente de mil dólares ($1,000.00) y señaló vista de seguimiento para el 4 de marzo de 1997. La Secretaría de este Tribunal le asignó el número KLCE-97-00094.

Señalaron como errores que:

*"Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Aguadilla, al ordenar que consigna [sic] en el Tribunal el pago de la hipoteca por la suma adeudada.*

*Erró el Honorable Tribunal de Primera Instancia, al ordenar a los aquí peticionarios a depositar en el Tribunal en o antes del 15 de febrero de 1997 el pago de la hipoteca por los meses adeudados.*

*Erró el Honorable Tribunal de Primera Instancia, al señalar vista de seguimiento para el 4 de marzo de 1997, a las 8:30 de la mañana."*

El 14 de febrero de 1997, H.F. presentó su oposición al recurso presentado. El panel compuesto por los Jueces Rossy García, Martínez Torres y Rodríguez García emitió resolución remitiéndonos el referido recurso para que determináramos si habríamos de consolidarlo con el Núm. KLCE-96-00596. El 3 de marzo de 1997, emitimos resolución donde ordenamos la consolidación de ambos recursos y ordenamos la paralización de los procedimientos en el Tribunal de Primera Instancia hasta tanto este foro resolviera los méritos de los recursos presentados. El 12 de mayo fueron elevados a este tribunal los autos originales del caso Núm. KLCE-96-00596. Estudiado el mismo, así como las comparecencias de las partes en ambos recursos, expedimos y revocamos.

## II

Es de conocimiento general que la moción para que se dicte sentencia sumaria, consagrada en la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, es una herramienta mediante la cual una parte le solicita al Tribunal que adjudique sin la celebración de un juicio. *Cuadrado v. Santiago Rodríguez*, 126 D.P.R ___ (1990), **90 J.T.S. 59**, pág. 7,702.

Específicamente, la Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, dispone que *"una parte contra la cual se haya formulado una demanda podrá en cualquier momento presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".*

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 36.3, dispone que procede dictar sentencia sumaria *"si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, demostrasen que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente".*

En el presente caso no existe controversia de hecho en cuanto a la realidad de que la finca en cuestión está doblemente inmatriculada. Así surge de todos los documentos que obran en los autos originales. Son las consecuencias de esa realidad lo que debemos auscultar.

## III

En efecto, los hechos del presente caso constituyen una clásica instancia de doble inmatriculación. El Tribunal Supremo ha definido el concepto de la siguiente manera:

*"La doble inmatriculación es un estado irregular que se produce a veces en el Registro de la Propiedad consistente en que una misma finca, por entero, o una misma finca y parte de otra, constan inmatriculadas dos o más veces". Perón Cruz v. Fernández,* 101 D.P.R. 365, 371, nota 6, (1973).

En el presente caso tenemos dos títulos igualmente válidos, sobre una misma finca, los cuales surgen cada cual de su respectiva inscripción en el Registro de la Propiedad. La solución a esta anómala situación no la provee la Ley Hipotecaria. Lo único que dicha ley dispone al respecto es que:

*"Si el que tuviera inscrita a su favor una finca creyere que otra inscripción de finca señalada bajo número diferente se refiere al mismo inmueble y al mismo titular, podrá solicitar de la Sala del Tribunal Superior correspondiente que, con citación de todos los interesados y siempre que se pruebe la identidad de ambas fincas como un sólo inmueble dicte auto resolviendo cuál de ambas inscripciones subsistirá.*

*Cuando la doble inmatriculación se refiera a distintos titulares se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble.*

*En ambos casos se ordenará la cancelación de la inscripción correspondiente.*

*Cuando el Registrador notare que una finca aparece inscrita más de una vez, notificará de tal hecho a los presentantes y a los notarios autorizantes de los títulos inscritos en ambas fincas y pondrá una nota a los efectos de haber enviado tal aviso, al margen del asiento correspondiente de las fincas. El Registrador no procederá a prácticar ningún otro asiento hasta tanto no se cumpla con lo dispuesto en esta sección para el caso de la doble inmatriculación."* 30 L.P.R.A. sec. 2776. Tenemos pues, que recurrir a la jurisprudencia y a los tratadistas.

Así La Cruz Berdejo nos dice que:

*"para determinar, en la lucha entre titulares de folio distinto, quién lo es realmente, hay que remontarse al origen de los folios y averiguar cuál de ellos se funda en una titularidad real y por tanto, es el materialmente válido. La validez del título originario y del folio que sirve al verdadero titular para eliminar la otra inmatriculación, se determina por las reglas de Derecho Civil, pues conforme a ellas ha de averiguarse a quién correspondía el dominio al inmatricular la finca, atribución que servirá de base, en principio, a la preferencia del folio correspondiente".* La Cruz Berdejo y Sancho Rebullida, *Derecho Inmobiliario Registral*, 2da ed., Barcelona, 1984, pág. 208.

Debemos, pues, recurrir a los principios del Derecho Civil. A tales efectos, el Art. 1362 del Código Civil, 31 L.P.R.A. sec. 3822, dispone que:

*"Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe si fuere mueble. Si fuere inmueble, la propiedad pertenecerá al adquiriente que antes la haya inscrito en el registro.*

*Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión, y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."*

Además, el Art. 374 del Código Civil, 31 L.P.R.A. sec. 1448, dispone, en lo pertinente que:

*"La posesión como hecho, no puede reconocerse en dos personalidades distintas fuera de los casos de indivisión. Si surgiere contienda sobre el hecho de la posesión, será preferido el poseedor actual, si resultaren dos poseedores, el más antiguo; si los hechos de las posesiones fueran los mismos, el que presente título."*

Apliquemos, pues, estos principios a los hechos del presente caso. La hipoteca sobre la finca 7,792 a favor del Banco de la Vivienda fue autorizada el 7 de diciembre de 1971 y aparentemente fue presentada en el Registro en esa misma fecha. Surge del expediente apelativo que, al menos en algún día del mes de diciembre de 1971, la misma fue presentada para su inscripción.

El 21 de diciembre de 1978 se dio la venta judicial de la finca 7,792 a favor del Banco de la Vivienda.

La hipoteca a favor de H.F. sobre la finca 12,198 fue autorizada el 30 de mayo de 1979. No surge

con exactitud del expediente la fecha exacta en que fue inscrita en el Registro.

El 25 de septiembre de 1980, H.F. obtuvo, mediante venta judicial, la titularidad sobre la finca 12,198. Esta compraventa fue presentada en el Registro el 11 de noviembre de 1980.

Es cierto, como alega H.F., que la venta judicial, mediante la cual dicha parte obtuvo la finca 12,198, es anterior a la fecha en que el Banco de la Vivienda inscribió la venta judicial a su favor en cuanto a la finca 7,792.

Sin embargo, es sabido que salvo en contadas excepciones, el Registro de la Propiedad es declarativo y no constitutivo. De ahí la frase comúnmente conocida: *"El Registro ni da ni quita derechos."* Es decir, el título no depende de la fecha en que se inscribió, sino del día en que efectivamente se consumó el negocio jurídico de que se trate. *USI Properties v. Registrador,* 124 D. P.R. 448 , 467 (1989); *Marín v. Montijo,* 109 D.P.R. 268, 275 (1979).

Por tanto, los hechos que determinan quién es el titular de la finca inmatriculada doblemente tuvieron lugar el 21 de diciembre de 1978 y el 25 de septiembre de 1980, fechas en que las partes adquirieron la finca en cuestión.

Es decir, el Banco de la Vivienda se convirtió en dueño de la finca número 7,792 casi dos años antes que H.F. Por tanto, aplicando los ya citados Arts. 1362 y 374 del Código Civil, es forzoso concluir que el título de la finca en cuestión le corresponde al Banco de la Vivienda.

La alegación de H.F. a los efectos de que es tercero registral carece de mérito. El Tribunal Supremo ha expresado que en casos de doble inmatriculación desaparece la protección de la Ley Hipotecaria. *Alameda Torres v. Muñoz Román,* ___ D.P.R. ___ (1992), **92 J.T.S. 22**, pág. 9126. Por tanto, estando ante dos títulos válidos no es posible la defensa de tercero registral. *Pérez Cruz v. Fernández Martínez,* 106 D.P.R. 144, 150 (1977).

Como hemos expresado, se impugna, sin embargo, la validez del título del Banco de la Vivienda. H.F. y el matrimonio Toledo Montilla alegan que lo que el Banco hipotecó y se adjudicó posteriormente fue el derecho de usufructo sobre la finca objeto de este litigio, por lo que el título sobre la propiedad que ostentaba H.F. y posteriormente el matrimonio Toledo Montilla, es el único que es sobre el pleno dominio, por lo que debe ser el que ha de prevalecer.

No les asiste la razón.

Por disposición de ley el título del Banco es sobre el pleno dominio de la finca 7,792. Véase Art. 8 de la Ley Núm. 35 de 1 de junio de 1969, citado en la pág. 8 de esta resolución. El E.L.A. puede disponer de sus tierras con las condiciones que entienda necesarias. No somos quiénes para cuestionar la letra clara de la ley. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14.

Sólo resolvemos hoy que en el caso de autos nos encontramos ante una instancia de doble inmatriculación y que, de acuerdo a la ley, procede se valide la inscripción de la finca 7,792 a nombre del Banco de la Vivienda y que se deje sin efecto la inscripción de la finca 123,198 a nombre de H. F.

No resolvemos hoy si procede acción en daños contra el E.L.A por la alegada negligencia del Registrador de la Propiedad al inmatricular doblemente la finca, así como tampoco si ante la reclamación de saneamiento de los esposos Toledo Montilla responde tanto la Administración de Veteranos como H.F. o si sólo la primera. Le corresponde al Tribunal de Primera Instancia resolver, en primer término, las controversias mencionadas.

En atención, a todo lo aquí expresado, se ordena la cancelación de la inscripción de la finca número 12,198 y que se mantenga en efectividad y vigencia la inscripción de la finca número 7,792 cuyo titular es el Banco de la Vivienda.

En consecuencia, se revocan las resoluciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, de fechas 16 de mayo de 1996 y 10 de enero de 1997. Se ordena la devolución

al matrimonio Toledo Montilla de los trece mil seiscientos dólares ($13,600) que éstos consignaron en el Tribunal por concepto del pago de la hipoteca de los meses adeudados a H.F. Se ordena, además, la devolución de los cien dólares ($100) que los esposos Toledo Montilla consignaron en calidad de fianza de no residente, toda vez que éstos son los demandados en los procedimientos ante el foro de instancia y no los proponentes.

Se devuelve el caso al Tribunal de Primera Instancia para que allí continúen los procedimientos de manera consistente con lo aquí resuelto.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 191

**1.** Del récord apelativo no surge cuándo fue presentada en el Registro dicha hipoteca. Partimos de la premisa de que fue presentada en esa misma fecha o pocos días después.

**2.** El referido artículo dispone que *"[e]l vendedor está obligado a la entrega y saneamiento de la cosa objeto de la venta".*